J-S56017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.D.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3225 EDA 2016 |

Appeal from the Order Entered September 8, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No: CP-51-AP-0000693-2016

BEFORE: BOWES, STABILE, and PLATT[*], JJ.

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 19, 2017**

K.R. ("Mother") appeals from the decree entered on September 8, 2016, in the Court of Common Pleas of Philadelphia County, that involuntarily terminated her parental rights to her daughter, S.D.R., born in September of 2012.[1]  Upon careful review, we affirm.

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court set forth the factual and procedural history of this matter, which the record evidence supports.  As such, we adopt it herein.  Trial Court Opinion, 4/5/17, at 1-4.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] By separate decrees entered on September 8, 2016, the trial court involuntarily terminated the parental rights of S.D.R.'s father, A.X. ("Father"), and the parental rights of the unknown father.  Neither Father nor the unknown father filed notices of appeal.

By way of background, the Philadelphia Department of Human Services ("DHS") received a report on December 3, 2014, alleging that Mother left S.D.R. alone in a motel room when she was arrested in the State of Georgia for crimes involving theft. Trial Court Opinion, 4/5/17, at 1. Upon learning of Mother's arrest, S.D.R.'s maternal grandmother, M.H. ("Maternal Grandmother"), retrieved S.D.R. from Georgia and brought her to Philadelphia. *Id.* In mid-December of 2014, Mother, who was then released from prison, contacted DHS and advised that she did not give permission for Maternal Grandmother to take S.D.R. to Philadelphia, and that she wanted S.D.R. returned to her care in Georgia. *Id.* at 2; Petition, 8/1/16, Exhibit "A," at ¶ c. On January 9, 2015, DHS learned that Mother had filed a missing person report, and that S.D.R. was listed as a kidnap victim in the State of Georgia. *Id.* at 2-3. On that same date, DHS, pursuant to an order of protective custody, removed S.D.R. from the custody of Maternal Grandmother, and placed her in foster care. *Id.* at 3.

On January 22, 2015, the trial court adjudicated S.D.R. dependent. *Id.* at 3. The court ordered that Mother be referred to the Behavioral Health System ("BHS"). *Id.* Further, the court ordered that Mother be granted supervised visitation with S.D.R., and that DHS provide transportation assistance to Mother, if necessary. DHS Exhibit #1. Thereafter, permanency review hearings occurred at regular intervals.

On April 21, 2015, the court directed Mother to comply with the Single Case Plan ("SCP") objectives to attend parenting classes and anger

management counseling. Trial Court Opinion, 4/5/17, at 3. On July 21, 2015, the court directed Mother to obtain a parenting capacity evaluation. *Id.* On November 9, 2015, the court ordered Mother to attend domestic violence counseling. *Id.* In addition, the court directed Mother to provide written documentation to the Community Umbrella Agency regarding her treatment plan for both drug and alcohol and mental health services. *Id.* By the time of the permanency review hearing on February 3, 2016, Mother was residing in a shelter in New York City, and she was receiving drug and alcohol treatment. *Id.*

On August 1, 2016, DHS filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The trial court held a hearing on September 8, 2016. At the commencement of the hearing, Mother's counsel stipulated on the record in open court that, if called to testify, the caseworker would testify to the facts as set forth in the involuntary termination petition. N.T., 9/8/16, at 5; *see also* Involuntary Termination Petition, 8/1/16, at Exhibit "A." In addition, DHS presented the testimony of James Wirt, the case manager from Turning Points for Children. Although Mother attended the hearing and was represented by counsel, she did not testify or present any evidence on her own behalf.

By decree dated and entered on September 8, 2016, the trial court granted DHS's involuntary termination petition. Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal

pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on April 5, 2017.

On appeal, Mother presents the following issues for our review:

1. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Mother] under 23 Pa.C.S.A. § 2511(a)(1)?

2. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Mother] under 23 Pa.C.S.A. § 2511(a)(2)?

3. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Mother] under 23 Pa.C.S.A. § 2511(a)(5)?

4. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Mother] under 23 Pa.C.S.A. § 2511(a)(8)?

5. Whether the [t]rial [c]ourt erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of [Mother's] parental rights best serve[s] the child's developmental, physical and emotional needs and welfare?

Mother's brief at 5.

We consider Mother's issues according to the following standard.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the certified record supports the decree pursuant to Section 2511(a)(1) and (b), which provides as follows.[2]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

---

[2] Based on this disposition, we need not consider Mother's issues with respect to Section 2511(a)(2), (5), and (8).

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

This Court has explained:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006). In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re Adoption of Charles E.D.M.*, 550 Pa. 595, 708 A.2d 88, 91 (Pa. 1998).

- 6 -

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id*. at 92 (citation omitted).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008).

This Court has defined parental duty as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

On appeal, with respect to Section 2511(a), Mother argues that DHS failed to meet its burden of proof. Specifically, Mother argues that she was visiting S.D.R. and "was working on her drug and alcohol treatment." Mother's brief at 10. We disagree.

The trial court found that DHS proved by clear and convincing evidence that Mother refused or failed to perform her parental duties for six months prior to the filing of the termination petition pursuant to Section 2511(a)(1). The testimony of Mr. Wirt, the case manager, supports the court's findings. Mr. Wirt testified that Mother's SCP goals were to comply with drug and alcohol treatment, participate in parenting classes, obtain a

parenting capacity evaluation, obtain housing, and participate in supervised visitation with S.D.R. N.T., 9/8/17, at 8. He testified that Mother has not completed any of the objectives. *Id.* With respect to supervised visitation, Mr. Wirt testified that, since May of 2016, Mother has attended only two out of eighteen possible visits with S.D.R. *Id.* at 9. Further, he testified that Mother's last visit with S.D.R. was more than three months before the termination hearing. *Id.* at 8-9.

Upon review of the totality of the record evidence, we conclude that the evidence supports the trial court's conclusion that Mother has refused or failed to perform her parental duties far in excess of the requisite six-month period pursuant to Section 2511(a)(1). Indeed, the record demonstrates that, by the time of the termination hearing, S.D.R. had been in placement for twenty-one months, and Mother had not completed any of her SCP objectives. As such, we discern no abuse of discretion by the trial court.

In addition, Mother baldly asserts that the evidence does not support termination pursuant to Section 2511(b). We disagree.

Our Supreme Court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, *supra* at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* Court

observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Upon review, there is no evidence that a bond of any kind exists between S.D.R. and Mother. Therefore, it was reasonable for the court to infer that none exists. *See In re K.Z.S.*, *supra*. Mr. Wirt's testimony demonstrates that S.D.R. is in a pre-adoptive home, and that she views her foster mother as her parent. N.T., 9/8/17, at 9. Mr. Wirt testified S.D.R. will not be harmed if Mother's parental rights are terminated. *Id.* at 10. Based on Mr. Wirt's testimony, we discern no abuse of discretion by the court in concluding that involuntarily terminating Mother's parental rights will serve S.D.R.'s developmental, physical, and emotional needs and welfare.

To the extent Mother asserts that the evidence does not support termination because DHS failed to use reasonable efforts to reunify her with S.D.R., we disagree. In *In the Interest of D.C.D.*, 105 A.3d 662 (Pa. 2014), our Supreme Court reversed the order of this Court and reinstated the trial court's decision terminating the father's parental rights to his child. In doing so, the *D.C.D.* Court rejected this Court's holding that "Section 2511 of the Adoption Act, when read in conjunction with Section 6351 of the Juvenile Act, requires that an agency must provide a parent with reasonable efforts aimed at reunifying the parent with his or her children prior to

petitioning for termination of parental rights and that termination cannot be granted absent the provision of reasonable efforts." ***In the Interest of D.C.D.***, ***supra*** at 671. Rather, the Court held that nothing in the above-cited section of the Juvenile Act "forbids the granting of a petition to terminate parental rights, under Section 2511, as a consequence of the agency's failure to provide reasonable efforts to a parent." ***Id.*** at 675. As such, Mother's assertion is misplaced. In any event, our review of the record evidence demonstrates that DHS provided reasonable efforts to reunify Mother with S.D.R. for twenty-one months. Nevertheless, the record demonstrates that Mother's conduct warranted termination pursuant to Section 2511(a)(1) and that terminating her parental rights will serve S.D.R.'s developmental, physical, and emotional needs and welfare pursuant to Section 2511(b). Accordingly, we affirm the decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2017

- 11 -